Staples, J.
This action is brought by the assignee of Thomas S. Edmunds, a bankrupt, against J. "W. Harper, upon a bond executed in the year 1860 by Harper and Peter Stainback, the latter alleged also to be a bankrupt. Hpon the trial it appeared that Thomas S. Edmunds, the obligee, in the year 1860-61, after the date of the bond, became indebted to a mercantile firm composed of this Peter Stainback and E. S. Edmunds. In the year 1862 E. S. Edmunds assigned in writing all his interest in the account against Thomas S. Edmunds to his co-partner, who thus became the sole owner of the account. Eo question is raised as to the correctness of the account or as to the validity of the assignment.
It does not expressly appear that Stainback was the principal obligor in the bond in controversy, but it may be fairly inferred that such was the fact. It is in proof that when Edmunds, the obligee, was about to make a transfer of the bond for the benefit-of his creditors it was to Stainback he applied to learn if he had any objection to the transfer. Harper does not appear to have *640 been consulted at all on the subject. There is no doubt that Stain back’s sole object in obtaining an assignment the account against Thomas S. Edmunds was to use it as a set-off against the bond. With that view he con^jnue(j t0 hold -jpg aeC0Unt, and -with that view be no doubt proved the account in the bankrupt court. The amount due upon the account in 1862 was not much less than the amount due upon the bond. And if Stainback was the principal debtor, it is easy to understand why it was he acquired the whole account and retained it as a set-off against the bond. But upon the theory that Stain-back and Harper were equally bound for the debt, we must assume that Stainback was willing, nevertheless, to pay the whole amount of the bond without ever calling upon Harper to refund or to contribute his proportion. Stainback’s name is first on the bond, and throughout he appears to have acted as though he was the principal obligor. Certainly a jury would have been justified in so finding upon the facts already stated, and. I have no doubt the case was conducted in the court below upon that idea.
The first question, then, to be considered is, whether Stainback, if he were sued, -would have the right to use the account as a set-off against the bond.
The 4th section of chap. 168, Code of 1873, provides that in a suit for any debt the defendant may, at the trial, prove and have allowed against such debt any payment or set-off which is so described in his plea, or account filed therewith, as to give the plaintiff notice of its nature; but not otherwise. Although the claim of the plaintiff be jointly against several persons, and the set-off is of a debt not to all, but only to a part of them, this section shall extend to such set-off, if it appear that the persons against whom such claim is, stand in the relation of principal and surety, and the person entitled to the set-off is principal. This sec *641 tion, it is conceded, has made a radical change in the rules governing the application of set-offs in the common law courts. Under it, if the set-off is the principal in the bond, he is entitled to the benefit of it, notwithstanding the bond may be a joint and not a several obligation. According to the English statute, a party cannot avail himself of a set-off unless his interest be such that he can bring an action in his own name for the recovery of the amount of the set-off; in other words, unless he is possessed of the legal title. But in this state, as was said in Allen et als. v. Hart, 18 Gratt. 722, the statute of set-offs has been liberally construed with a view to the furtherance of its obvious policy, which is to prevent multiplicity of suits; and so far as can be conveniently done, to effectuate in one action com- . píete justice between the parties. In Wartman v. Yost, 22 Gratt. 595, it was held that the principal obligor might set-off against the bond a judgment recovered by a third person against the obligee, and assigned to the defendant. In discussing that case, the president of the court clearly showed the wide difference between the English and the Virginia statute. Under the former, the debts must be mutual between plaintiff and defendant, and the courts deal only with the legal title. 5 Rob. Prac. 979-80. Our statute is much more comprehensive in its provisions; and there is no good reason for rej ecting the set-off", if valid in other respects, merely because the defendant is invested simply with the equitable title. If the assignee of a judgment may rely upon it as a set-off in an action at law, it is difficult to see why the assignee of an account may not do the same thing. In neither case does the assignee acquire inoré than an equity; and in neither case can he maintain an action in his own *642 name, because the statute authorizing an assignee to sue in his own name applies to bonds or notes in writing, and not to judgments or accounts. Code of 1873, ch. 141. § 17.
In the case before us the set-off is a partnership account, assigned by one of the partners to his co-partner. It would seem, therefore, to stand on higher ground than a common case of assignment, for as is well settled, partners are joint owners of the partnership effects. Between them there is an entire community of right and interest, and each has a concurrent title to all the partnership property. The partner, therefore, claiming under the assignment, claims in the double character of assignee and owner. Under all these circumstances, if Peter Stainbaek had been sued, it would be very clear that he might have relied upon the account as a proper set-off against the bond. And although by reason of his alleged bankruptcy he is not sued, his surety in the bond may rely upon any set-off which his principal might have claimed had the suit been brought against him. See Decolyear on Guarantees and Principal and Surety, pp. 431, 432, and notes; Earl of Oxford’s case, 2 Lead. Cases, 1291, 1341.
It is said, however, that Stainbaek having gone into bankruptcy, all his effects are vested in his assignees, and that the bankrupt court is the proper tribunal to investigate and determine all the questions relating to the account of set-offs..
In the first place there is no proof in the record that Stainbaek is a bankrupt, beyond the single averment in the declaration. From the failure to join him in the action it may be fairly inferred that such is the fact. Still, if the plaintiff intended to rely upon the bankruptcy, and to claim the benefit of it as an estoppel, it was incumbent upon him to produce the record in bankruptcy, that the court may see what proceedings have *643 taken place in that court, and whether there was anything in them to preclude the defendant now from claiming the benefit of the set-off. On the trial of this case Harper, the surety, is found in possession of the original account, with the assignment, neither Stainbaek nor his assignee in bankruptcy, if he ever had one, making any objection. And if either or both had objected, it may be questioned whether they could have prevented Harper from relying on a set-off which his principal had acquired long before the bankruptcy.
It is worthy of remark that the objection in the court below to the set-off was not founded upon the supposed bankruptcy of Stainbaek, but upon the ground that the assignment of the account did not change its nature as involving a joint liability.
Another objection made is, that Thomas H. Edmunds, the obligee in the bond, having gone into bankruptcy, and Stainbaek having proved the account in the bankrupt court, is precluded from asserting his claim to it in any other court. It is very cleai’, however, that the sole purpose of Stainbaek in proving the account was to rely upon it as a set-off Ho one supposes he was willing to give up the account as a set-off against the bond, and to take his chances for a dividend among the obligee’s creditors. Had the bankrupt court gone on, as it ought to have done, to administer the bankrupt’s estate, the whole matter would have been settled in that court by simply applying the account to the bond, and thus adjusting finally the rights of the parties. Instead of that, it would seem that although Thomas S. Edmunds went into bankruptcy in 1867 or 1868, nothing was ever done in the bankrupt court until 1870 or 1871, when an order was entered, on motion of Thomas S. Edmunds, directing the assignee to bring the present suit. Whether any other proceedings were ever had, this record does not infoi'm us.
*644 It does not appear, indeed, that Edmunds has to this day obtained his discharge in bankruptcy. Where the elects to proceed in the bankrupt court with a view to share in the assets he will not be held thereby to ^ave waived his right of action even against the bankrupt himself, unless the latter obtains his discharge. But when it is manifest that the sole object in proving the account in the bankrupt court is to use it as a set-off against a demand due the bankrupt, it would be a gross perversion of the rule to hold that the party thereby deprives himself of the right to rely upon the set-off’ whenever the occasion arises for so doing. No one is injured by allowing the set-off. Ho one can justly complain of it. For whenever there are cross demands, if they are equal, nothing is due either party; and if they are unequal in amount, the balance remaining after deducting the less sum from the greater is all that is justly due. In the case before us nothing could be more unjust than to require this surety to submit to a recovery in the present action, and to turn him over to a vain pursuit of indemnity or redress in the bankrupt courts. That the justice of the case is plainly with the defendant does not admit of a question.
The only difficulty in it grows out of the two instructions given to the jury in the circuit court on the motion of the defendant. From the facts certified it is clear there was no evidence before the jury tending to prove that Thomas D. Edmunds had ever consented that the set-off should be put as a credit on the bond, or that the bankrupt court had passed upon and allowed the set-off as a debt against him; and yet the circuit court instructed the jury, if they believed either of these facts they must allow the set-off. Here, then, we have instructions correct as a matter of law, but without testimony to sustain them. In such case, however, the appellate court does not reverse when it *645 is apparent upon the whole record that no injustice has been done, and the jury could not have been misled by the instructions. Colvin v. Menifee, 11 Gratt. 87; Danville Bank v. Waddill, 27 Gratt. 448.
The circuit court might have gone much farther than it did. It might have told the jury that the account, if correct, about which there was no dispute, was a proper set-off, although the obligee did not consent to it as a credit on the bond, and although the bankrupt court had not passed upon it. The instructions, therefore, fell short of what the defendant might' justly have claimed. This court will never disturb a just verdict, fully sustained by the evidence, because the trying court has given an instruction upon an abstract proposition of laiv; more especially when it is apparent the excepting party cannot have been prejudiced by the ruling. For the reasons stated, I am of opinion there is no error in the judgment of the circuit court, and the same must be affirmed.
The other judges concurred in the opinion of Staples, J.
Judgment arrirmed.